SUCN. DE SALVADOR PÉREZ Y PÉREZ, ET AL., demandantes y apelantes, *v.* TOMÁS E. GUAL y LA BORINQUEN FURNITURE CO., INC., demandados y apelados.

Número 11070.

*Sometido:* 1 de julio de 1954. *Resuelto:* 21 de julio de 1954.

*Daniel Pellón Lafuente,* abogado de la apelante; *Jorge M. Morales* y *Ramón L. Nevares,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

La Sucesión de Salvador Pérez y Pérez había arrendado el edificio marcado con el número 1465 en la Avenida Ponce de León de Santurce, Puerto Rico, a Felipe López, quien explotaba en el mismo un negocio de mueblería bajo el nombre comercial de Borinquen Furniture Co. López vendió ese negocio a Tomás E. Gual aquí codemandado y apelado. En un recurso de sentencia declaratoria resolvimos que Gual poseía el indicado inmueble en virtud de un contrato verbal de arrendamiento celebrado entre él y Rosa Pérez Pérez y su esposo Salvador Pérez y Pérez, causante este último de los aquí demandantes y apelantes. *Gual* v. *Pérez,* 72 D.P.R. 609. Continuó Gual con el negocio de mueblería operándolo bajo el mismo nombre de Borinquen Furniture Co. A fines de junio de 1951 y en meses subsiguientes la corporación doméstica Borinquen Furniture Co., Inc., remitió por correo al administrador de la Sucesión de Salvador Pérez y Pérez, cheques

librados por dicha corporación en pago de los cánones de arrendamiento del inmueble arrendado a Gual.(¹)

Los arrendadores se negaron a aceptar estos pagos alegando que ellos no habían dado su consentimiento al arrendatario Gual para que éste subarrendara el inmueble a la corporación Borinquen Furniture Co., Inc., domiciliada en el Edificio Ribot, núm. 1103 de la Ave. Ponce de León en Santurce. Gual procedió entonces a depositar dichos cánones en el Tribunal Municipal, Sala de San Juan.

Así las cosas, la Sucesión de Salvador Pérez y Pérez interpuso demanda de desahucio contra Tomás E. Gual y la Borinquen Furniture Co., Inc., alegando dos causas de acción, a saber:

(1) Subarrendamiento del inmueble sin el consentimiento de los arrendadores, y

(2) Falta de pago de los cánones de arrendamiento que fueron depositados en el Tribunal Municipal.

---

(¹) El texto de la primera carta y del cheque remitido por la Borinquen Furniture Co., Inc., a la Sucesión de Salvador Pérez y Pérez, son como sigue:

"Junio 28, 1951
"Correo Certificado con Acuse de Recibo

"Sr. Salvador J. Pérez, Administrador,
"Sucn. Pérez,
"Muñoz Rivera Núm. 1203
"Río Piedras, P. R.
"Estimado señor:

"Tenemos el gusto de incluirle nuestro cheque núm. 228 debidamente certificado por la suma de $218 que cubre la renta del mes de Junio de 1951, por el local que ocupa esta mueblería en Ponce de León núm. 1465 en Santurce.

"Esperando sea todo de su entera conformidad, quedamos, de Ud.,

"Atentamente,
"Borinquen Furniture Co., Inc.,
"por (fdo.) R. Serrati"

"Núm. 228                        Santurce, P. R. Junio 28/1951
"Renta mes de junio              Borinquen Furniture Co., Inc.
1951 local de Ponce
de León Núm. 1465,          Ave. Ponce de León 1103—Tel. 2-0707
                                     Santurce, Puerto Rico.
"Páguese a la orden de Salvador J. Pérez, Administrador—$218.00
          "218.00 Dólares
"The Royal Bank of Canada                    (Fdo.) T. E. Gual
"Santurce, P. R.—59-294                          Presidente"

Contestaron los demandados y después de celebrarse las dos comparecencias de rigor la corte a quo dictó sentencia declarando sin lugar la demanda y condenó a los demandantes a pagar las costas y $150 para honorarios de abogado. Apelaron los demandantes y estando su recurso pendiente ante nos decretamos el desahucio del demandado Gual en otro litigio entre las mismas partes. *Sucn. Pérez* v. *Gual*, 75 D.P.R. 385. En virtud de esta sentencia los demandantes y apelantes se encuentran en posesión del susodicho inmueble. Esto convertiría el presente recurso en ilusorio a no ser por el pronunciamiento que contiene la sentencia apelada condenando a los apelantes al pago de las costas y honorarios de abogado.

La corte a quo resolvió que Gual no había cedido el uso ni subarrendado el inmueble en litigio y que todavía Gual continuaba poseyéndolo. Al efecto concluyó que si bien Gual procedió en unión a su esposa, madre, hermana y tía "a incorporar una corporación que se llama Borinquen Furniture Co., Inc., sucesora del nombre del negocio (*trade name*) de la Borinquen Furniture Co., de cuyo capital en acciones posee el 85% el señor Tomás E. Gual, . . . . existe entre el demandado Tomás E. Gual y la Borinquen Furniture Co., Inc., una casi total identidad e interés, pudiendo concluirse que el cambio en el nombre del negocio (*trade name*) no altera ni desvirtúa las responsabilidades anteriores de la Borinquen Furniture Co., por tratarse del mismo negocio y de la misma persona."

Tanto de la prueba creída por la corte a quo, como de las conclusiones de ésta, se desprende que el negocio de mueblería sito en el local arrendado a Gual lo explotaba ahora la corporación Borinquen Furniture Co., Inc., de la cual es presidente Gual; que la indicada corporación tiene empleados suyos trabajando en dicho negocio (T. E., pág. 43); que la corporación tiene un capital autorizado de $200,000, del cual se ha pagado $70,000 en acciones expedidas; que de estas acciones Gual posee el 85.08 por ciento (402 acciones de $100 cada una de un total de 707) y el resto las posee y es dueña de

ellas una hermana de Gual (T. E., página 51) ; que el intento de pago de los cánones correspondientes a los meses de junio, julio y agosto de 1951 lo hizo la corporación Borinquen Furniture Co., Inc., mediante cheques librados por ella, y que ante la negativa de los arrendadores a aceptar dichos cheques, Gual consignó personalmente el importe de dichos cánones en el Tribunal Municipal.

No podemos convenir con el tribunal sentenciador en que lo único que ha ocurrido aquí respecto al negocio de mueblería que existe en el local arrendado, ha sido un mero cambio de nombre comercial.

Sabido es que una corporación tiene personalidad jurídica separada y distinta a la de sus accionistas y que la regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas, no puede ser ignorada o descartada (*disregarded*). Sec. 3 de nuestra Ley de Corporaciones Privadas (Ley núm. 30 de 9 de marzo de 1911 [pág. 93], según ha sido enmendada) ; art. 27(2) del Código Civil (ed. 1930) ; 1 Fletcher, *Cyclopedia Corporation*, (Ed. Permanente, sec. 28, pág. 103 y 104; 1 Thompson *on Corporations*, sec. 9, pág. 14; 13 Am. Jur., sec. 70, pág. 213; *Swiggett* v. *Swigget, Inc.*, 55 D.P.R. 76; *Sprouse* v. *C.I.R.*, 122 F.2d 973; *Re Mt. Sinai Hospital*, 164 N. E. 871; *International Shoe Co.* v. *Washington*, 326, U.S. 310, 90 L. ed. 95; *State on Information of Mc Kittrick ex rel. California City* v. *Mo. Utilities Co.*, 96 S.W. 2d 607.([2]) Hay, sin embargo, algunas excepciones a esta regla. Según se dijo en *Swiggett* v. *Swiggett, Inc.*, supra, citando de un caso de California, los actos y obligaciones de una corporación pueden considerarse como actos de una persona particular y viceversa, siempre que concurran las siguientes circunstancias: "Primero: Que la corporación no sólo esté influenciada y gobernada por esa persona, sino que haya entre ellas, tal identidad de interés y propiedad, que la corporación y la persona se hallen confundidas; segundo:

---

([2]) Para otros casos véase *Permanent A.L.R. Digest*, Vol. 3, págs. 891 a 893.

que los hechos sean de tal naturaleza que el sostener la ficción de dos entidades distintas, bajo las circunstancias especiales del caso, equivalga a sancionar un fraude o promover una injusticia."[3]   Véase además, 1 A.L.R. 610; 34 A.L.R. 597; y casos citados en el "Blue Book" de A.L.R., Volumen Permanente, págs. 338 a 342 y Volumen Permanente núm. 2, pág. 85; 1 Fletcher, *ob cit.*, sec. 41, pág. 134; 1 Thompson, *ob cit.*, sec. 10, pág. 16.

■■ Aparentemente aquí no se trata de ninguna de las excepciones que justifiquen el que se descarte o ignore la existencia de la corporación independientemente de sus accionistas.   El primero en establecer la distinción es el propio Gual. Recuérdese si no que cuando la corporación le escribe a los arrendadores enviándole un cheque suyo para pagar el canon de arrendamiento y aquéllos lo rechazan, entonces Gual, a nombre propio y no en el de la corporación, hace la consignación del canon en el Tribunal Municipal.   Puede argüirse que si Gual y la corporación eran la misma persona, el hecho de que Gual hiciera la consignación a nombre propio carece de importancia.   Sin embargo, es significativo que Gual no insistiera en que los pagos ofrecidos por la corporación, eran sus propios pagos y no el de una subarrendataria.

Por otro lado, la defensa de identidad de personas, levantada por Gual, equivale a permitir a los accionistas determinar por ellos mismos, según convenga a sus intereses, cuándo es que la corporación tiene personalidad independiente y cuándo es que está confundida con sus accionistas.   La doctrina de "rasgar el velo corporativo", hasta donde sepamos

---

[3] Esta doctrina, llamada "rasgar el velo corporativo" se ha aplicado entre otros, en los siguientes casos:

(1) En la evasión del pago de contribuciones; (2) cuando se confunden los negocios de la corporación con el de los accionistas como por ejemplo si los accionistas hacen negocios sin intentar mantener los negocios corporativos separados de sus negocios personales; (3) para evadir el cumplimiento de obligaciones; (4) cuando la corporación se organiza con capital insuficiente para satisfacer sus deudas; (5) para evadir disposiciones legales.

Véase *Cruz* v. *Ramírez*, 75 D.P.R. 947.

persigue un propósito distinto.   Es dudoso o por lo menos muy debatible que bajo los hechos de este caso deba considerarse que los actos de la corporación, en tanto se refieren al disfrute del uso del local arrendado, son los actos de Gual, cuando todos los indicios de la prueba son que para otros fines, la corporación tiene personalidad distinta a la de sus accionistas.   Lo menos que puede decirse es que el texto de las cartas escritas por la Borinquen Furniture Co., Inc., a los arrendadores, proveían a éstos información suficiente al efecto de que el negocio de mueblería establecido en el local arrendado a Gual, era explotado ahora por una corporación, y no por Gual.   Ello era por lo menos un indicio razonable de que Gual había violado nuestra Ley de Alquileres Razonables al subarrendar la propiedad aquí en litigio sin el consentimiento o la autorización escrita de los arrendadores, causa ésta que da lugar al desahucio.   Art. 12 A(3) de la Ley núm. 201 de 15 de mayo de 1948 (pág. 575).

█ El art. 30 de la Ley de Alquileres Urbanos[4] de España también prohibe el subarriendo de locales de negocio sin la autorización expresa y escrita del arrendador.   Interpretando dicho artículo se dijo por el Tribunal Supremo de España, lo siguiente:

"2) Sea cual fuere la calificación jurídica que pueda merecer la constitución de una sociedad por el inquilino con tercera persona, dando así origen a una nueva personalidad que de hecho venga ejerciendo la industria en el local arrendado, será evidente que para la introducción de esa nueva personalidad en dicho local precisa el consentimiento del propietario."   (Sentencia de 6 de febrero de 1948, Revista General de Legislación y Jurisprudencia, tomo 21, pág. 402.)

Las decisiones de los tribunales americanos respecto a cuándo se considera violado un convenio que prohibe subarren-

---

[4] Dicho artículo dispone:
"Art. 30.   El subarriendo de locales de negocio exigirá siempre la autorización expresa y escrita del arrendador."

dar, no son uniformes. Muchas cortes sostienen que el convenio no ha sido violado en las siguientes situaciones:

1º Cuando el arrendatario se asocia con otro entrando el último en el disfrute del local;

2º Cuando el arrendatario (una sociedad) admite o pierde socios, y

3º Cuando la sociedad termina y uno de sus socios adquiere la posesión del local.

Otras cortes sostienen lo contrario. 51 C.J.S., sec. 33, pág. 546. No debe olvidarse, al considerar estas decisiones que la sociedad (*partnership*) del derecho americano no tiene personalidad jurídica independiente. Sin embargo, se ha considerado que constituye una violación del convenio el traspaso a una corporación por una sociedad del arrendamiento de un local de negocio. *Rubin* v. *Leosatis*, 166 Atl. 428.

La acción de desahucio debió prosperar y en su consecuencia, la sentencia apelada debe ser revocada y en esa forma exonerados los demandantes apelantes del pago de las costas y honorarios de abogado. Por lo demás, la resolución de este recurso, según dijimos antes, carece de finalidad práctica.

*Se dictará sentencia revocando la apelada pero sin incluir en ella pronunciamiento alguno en cuanto al desahucio, con costas a los demandados.*

El Juez Asociado Sr. Belaval no intervino.