Cordero, Juez Ponente
*971 TEXTO COMPLETO DE LA RESOLUCIÓN
Mediante el recurso de revisión presentado por lrst Quality Services Corp. (“Quality Services”) se nos solicita la revisión de la adjudicación de la Subasta 2004/089 emitida el 17 de mayo de 2004 por la Junta de Subastas del Municipio de San Juan (“Junta”). En ésta, la Junta no le adjudicó la subasta a Quality Services a pesar de ser éste el postor más bajo.
I
Los hechos en el caso ante nos se circunscriben a que el 30 de octubre de 2003, la Junta publicó un aviso de subastas para servicios de demolición de unas estructuras de hormigón, madera y construcción mixta ubicadas en el Municipio de San Juan (Subasta 2004/089) la cual sería celebrada el 20 de noviembre de 2003.
A la apertura de subasta comparecieron los siguientes licitadores: (1) Quality Services; (2) Design Build, S. E; (3) Empresas Toledo; (4) X’Perts, Inc., y (5) Aníbal Díaz Construction, Inc.
La Junta evaluó las propuestas de los licitadores y procedió a comparar las mismas concluyendo que Quality Services resultó ser el postor más bajo para todos los renglones, excepto el renglón identificado con el A2 para las estructuras de hormigón. No obstante, la Junta no otorgó la subasta a éste. La Junta señaló que el Departamento solicitante, la Policía Municipal, el 4 de marzo de 2004 recomendó no adjudicar la subasta a Quality Services, debido a historial de incumplimiento con el Municipio en contratos anteriores bajo el nombre comercial de Grease Pit Industrial Parts and Services, Inc. (“Grease Pit”).
La Junta concluyó que Quality Services y Grease Pit “tienen similitudes sustanciales en los documentos en el Registro de Licitadores que llevan a la Junta a concluir que son las mismas personas tras distintas figuras jurídicas.” La Junta señaló que:

“El Municipio de San Juan posee evidencia del incumplimiento de la compañía Grease Pit Industrial and Services, Inc. en la subasta 99-354 sobre servicios de demolición de estructuras en el Municipio de San Juan, el cual provocó que los objetivos programáticos del Municipio no se llevarán a cabo según pautados. Estos hechos no permiten a la Junta contar con el ánimo de la seguridad de que First Quality Services Corp., cumplirá con los términos del contrato que en su día se otorgue. ”

Debido a ello, la Junta adjudicó el 17 de mayo de 2004, la subasta por renglones. Así, otorgó a Aníbal Díaz Construction los renglones Al, A2, Bl, B2, DI, D2 del Grupo A o estructuras de hormigón; El, E2, HI, y H2 del Grupo B o madera y II y 12 del Grupo C, o construcción mixta, y a Xpert’s, los renglones Fl y F2 del Grupo B, o Madera, y J1 y J2 del Grupo C, o construcción mixta.
Quality Services presentó el 25 de mayo de 2004 una “Moción de Reconsideración” la cual no fue acogida *972 por la Junta, por lo que acude ante este Tribunal para revisar dicha determinación. En síntesis, Quality Services señaló que erró la Junta al no concederle la buena pro, no obstante ser el postor más bajo, y al descorrer el velo corporativo en abierto menosprecio a los requerimientos legales aplicables.
n
Con relación a los procedimientos de adjudicación de subasta, éstos son informales, limitándose los procedimientos formales al proceso de reconsideración y revisión judicial. L.P.C. & D., Inc. v. Autoridad de Carreteras, 149 D.P.R. 869, 877 (1999) Una vez se ha tomado la decisión administrativa, la parte o partes peijudicadas por la misma tienen derecho a solicitar la revisión judicial de la misma, de acuerdo a las disposiciones legales pertinentes. En el caso de la adjudicación de subastas municipales, este Tribunal es el foro con jurisdicción exclusiva para revisar los acuerdos o adjudicaciones de la Junta de Subastas. Ley Núm. 81, supra, Ait. 15.002, 21 L.P.R.A. § 4702.
Las determinaciones que hacen los municipios sobre la adjudicación de una subasta bajo su incumbencia es revisable ante este Tribunal y debemos concederle el mismo grado de deferencia que se le confiere a los organismos administrativos del gobierno central, al revisar decisiones sobre asuntos bajo su incumbencia.
Es decir, al examinar el recurso ante nos, debemos aplicar la norma conocida de que las decisiones de los foros administrativos poseen una presunción de regularidad y corrección, Rivera Concepción v. Administración de Reglamentos y Permisos, _D.P.R._ (2000), 2000 J.T.S. 155, a la pág. 160; Assoc. Ins. Agencies, Inc. v. Com. de Seguros, 144 D.P.R. 425, 436 (1997); Misión Ind. v. J.P. y A.A.A., 142 D.P.R. 656, 672-673 (1997); Metropolitana, S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Viajes Gallardo v. Clavell, 131 D.P.R. 275, 289-290 (1992); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). A su vez, aplicará la norma de que las conclusiones e interpretaciones a las que llegue el municipio merecerá gran deferencia por parte de los tribunales. Véase: García Oyóla v. J.C.A., 142 D.P.R. 532, 540 (1997). Ello es así, porque ios tribunales debemos ser cautelosos al intervenir con las determinaciones administrativas. Metropolitana S.E. v. A.R.P.E., supra, a la pág. 213. El fundamento para ello es el hecho de que son las agencias administrativas, en este caso, el municipio, el que posee la experiencia y los conocimientos altamente especializados que se encuentran dentro del ámbito de sus facultades y responsabilidades. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993). Por tanto, Se establece una presunción de legalidad y corrección a su favor. A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones, 124 D.P.R. 858, 864 (1989); Murphy Bernabé v. Tribunal Superior, supra, a la pág. 699.
La revisión judicial es limitada. Sólo nos corresponde determinar si el municipio actuó arbitraria o ilegalmente o en forma tan irrazonable que abusó de su discreción, Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 761 (1999); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993). A tenor con esta norma de deferencia, los tribunales no alteran las determinaciones de hechos si del expediente surge evidencia sustancial que las sostenga, Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc., _D.P.R._ (2004), 2004 J.T.S. 4, a la pág. 501; Municipio de San Juan v. Junta de Calidad Ambiental, _D.P.R._ (2000), 2000 J.T.S. 193, a la pág. 474; Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc., _D.P.R._ (2000), 2000 J.T.S. 21, a la pág. 560-561; García Oyóla v. J.C.A., 142 D.P.R. 532, 540 (1997); Fac. C. Soc. Aplicadas, Inc. v. C.E.S., supra, a las págs. 532-533.
La evidencia sustancial “es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión,” Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc., supra, a la pág. 561; Ramírez Rivera v. Departamento de Salud, 147 D.P.R. 901, 906 (1999); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953).
Así es que, para convencer al tribunal de que la evidencia utilizada para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o *973 menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración, Municipio de San Juan v. Junta de Calidad Ambiental, supra, a la pág. 473; Ramírez Rivera v. Departamento de Salud, supra, a la pág. 906; Metropolitana, S.E. v. A.R.P.E., supra, a la pág. 213; Hilton Hotels v. Junta de Salario Mínimo, supra, a la pág. 686.
En resumen, la revisión judicial se circunscribe a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. Pacheco Torres v. Estancias de Yauco, S.E., 2003 J.T.S, 150, a la pág. 211.
III
De otra parte y en lo pertinente, la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. § 4001 et seq., establece en su Capítulo XI los procedimientos a seguir para la celebración y adjudicación de subastas. Establece una Junta de Subastas a ser constituida en cada Municipio y la responsabilidad de entender y adjudicar todas las subastas que se requieran por ley, reglamento u ordenanza. 21 L.P.R.A. § 4506. La propia Ley de Municipios Autónomos dispone que es obligatorio realizar una subasta cuando se trata de: (1) compras de materiales, equipo, comestibles, medicinas y otros suministros de igual o similar naturaleza, uso o características que excedan de diez mil (10,000) dólares; (2) toda obra de construcción o mejora pública por contrato que exceda de cuarenta mil (40,000) dólares, y (3) cualquier venta de propiedad mueble o inmueble. 21 L.P.R.A. § 4501.
El procedimiento de subasta es uno revestido de gran interés público. Great American Indemnity Co. v. Gobierno de la Capital, 59 D.P.R. 911, 916 (1942). El objetivo principal de las subastas es proteger el erario público consiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el gobierno al mejor precio posible. RBR Construction, S.E. v. Autoridad de Carreteras, 149 D.P.R. 836, 848-849 (1999). La norma general en nuestra jurisdicción sostiene que el objetivo principal de las subastas gubernamentales es obtener el mejor contrato posible para el Estado. Mar-Mol Co., Inc. v. Adm. Servicios Gen., 126 D.P.R. 864, 871 (1990).
Ahora bien, ¿qué criterios deben ser examinados por la Junta de Subastas antes de hacer una adjudicación? ¿Es el precio el único criterio a considerar? Las respuestas a estas preguntas nos las brinda la propia Ley de Municipios Autónomos, supra. Ésta, en su Art. 11.006, 21 L.P.R.A. § 4506, establece los criterios de adjudicación a ser utilizados por la Junta de Subastas:

“(a) Criterios de adjudicación- Cuando se trate de compras, construcciones o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. En el caso de ventas o arrendamiento de bienes muebles e inmuebles, adjudicará a favor del postor más alto. La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial y cualesquiera otras condiciones que se hayan insertado o incluido en el pliego de subasta.

La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. ” (Énfasis suplido.)
Estas normas de adjudicación, así como toda la reglamentación y legislación referente a subastas, persiguen proteger los intereses y dinero del Pueblo, al promover la competencia para lograr los precios más bajos posibles, evitar el favoritismo, la corrupción, el dispendio, la extravagancia y el descuido al otorgarse los *974 contratos y minimizar los riesgos de incumplimiento. Hatton v. Municipio de Ponce, 134 D.P.R. 1001, 1005 (1994); Mar-Mol Co., Inc. v. Adm. Servicios Gens., supra, a la pág. 871 (1990); Continental Const. Corp. v. Municipio de Bayamón, supra, a la pág. 563; Cancel v. Municipio de San Juan, 101 D.P.R. 296, 300 (1973); Justiniano v. ELA, 100 D.P.R. 334, 338 (1971).
En el caso particular del Municipio de San Juan, éste posee un Reglamento de Subastas aprobado el 6 de mayo de 1999 (“Reglamento”), mediante el cual se establecen las normas generales y procedimientos administrativos uniformes que rigen los trámites de publicación, celebración, evaluación y adjudicación de subastas. El Reglamento establece que luego de celebrada la apertura de subasta, la unidad administrativa solicitante podrá presentarle a la Junta sus recomendaciones sobre la adjudicación de la subasta. Como regla general, la recomendación se hará al postor del precio más bajo. Sin embargo, se podrá recomendar al postor mejor cualificado aun cuando no sea el postor del precio más bajo, en tanto se expresa claramente los fundamentos para esa excepción. El Reglamento dispone que los fundamentos podrán ser: (1) término de entrega o lugar de entrega, cuando este factor sea determinante al momento de la adjudicación; (2) historial de incumplimiento del lidiador en contratos con el Municipio, o en otras subastas o en el suministro de equipo o materiales comprados en mercado abierto, y (3) incumplimiento con especificaciones de subasta. Véase Reglamento, Artículo XI, sección 11.1 a 11.2.
El Reglamento establece que la adjudicación de la subasta se hará al postor más bajo, Artículo XII, sección 12.1 del Reglamento; sin embargo, la Junta podrá rechazar la propuesta de existir cualesquiera de las siguientes condiciones: (1) se beneficia el interés público; (2) la competencia no fue adecuada; (3) no existen fondos suficientes para el pago de la oferta; (4) no se cumplen con las especificaciones o condiciones; (5) se ofrecen precios irrazonables; (6) existe colusión, y (7) no se ha cumplido a satisfacción con los términos de un contrato otorgado anteriormente. Art. XU, sección 12.2 del Reglamento.
Así, vemos que aunque el precio más bajo es uno de los factores a considerar, no es el único ni el más importante. A su vez, existen otros factores a considerar al adjudicar una subasta: (1) que las propuestas sean conforme a las especificaciones de la misma; (2) la habilidad del postor para realizar y cumplir con el contrato, y (3) la responsabilidad económica del licitador, su reputación e integridad comercial, entre otros. Continental Constr. Corp. v. Municipio de Bayamón, 115 D.P.R. 559, 563 (1984).
IV
Se ha interpretado que el concepto de persona, en el sentido jurídico, es todo ser capaz de tener derechos y obligaciones, y que persona jurídica es, pues, la colectividad de personas o conjuntos de bienes que, organizados para la realización de un fin permanente, obtiene el reconocimiento del Estado sujeto de derecho. Rodríguez Román y Otros v. Banco Gubernamental de Fomento, _D.P.R._ (2000), 2000 J.T.S. 104, a la pág. 1343; Rivera Maldonado v. E.L.A., 119 D.P.R. 74, 80-81 (1987). La persona jurídica recibe su personalidad directamente de la ley, por lo que los límites de sus facultades, derechos y responsabilidades están fijados por la ley creadora. Rodríguez Román y otros v. Banco Gubernamental de Fomento para Puerto Rico, supra, a la pág. 1343; Rivera Maldonado v. E.L.A., supra, a la pág. 81.
El Código Civil de Puerto Rico, en sus artículos 27, 28, 29, 30 y 31, 31 L.P.R.A. § 101-105, establece que las corporaciones tienen personalidad jurídica propia. Estas disposiciones del Código Civil cristalizan la doctrina de la ficción, pues consideran a la persona jurídica, la corporación, como una creación legal. Carlos E. Díaz Olivo, Corporaciones, Hato Rey, Puerto Rico, Publicaciones Puertorriqueñas Inc., 1999, a la pág. 13. Así, también, el Artículo 2.01 y 2.02 de la Ley Núm. 144 de 10 de agosto de 1996, mejor conocida como la Ley General de Corporaciones de 1995, reconoce la personalidad jurídica de los entes corporativos. 14 L.P.R.A. § 2651 y 2652.
Por lo tanto, las corporaciones tienen personalidad jurídica propia y su propio patrimonio, distintos a la *975 personalidad y al patrimonio de sus accionistas, sean estos últimos personas naturales o jurídicas. Sucn. Santaella v. Srio. de Hacienda, 96 D.P.R. 442, 451 (1968); Sucn. Pérez v. Gual, 76 D.P.R. 959, 963 (1954); Swiggett v. Swiggett, Inc., 55 D.P.R. 76, 83 (1939); Carlos E. Díaz Olivo, supra, a la pág. 53. La norma general, según lo anteriormente expuesto, es que la corporación es una entidad separada y distinta de la de sus accionistas. Sin embargo, existe la excepción de rasgar o decorrer el velo corporativo, situación en la cual no se reconoce la ficción jurídica del ente corporativo, para imponerle responsabilidad personal a los accionistas.
En D.A.C.O. v. Alturas Fl. Dev. Corp. y Otros, 132 D.P.R. 905, 924 a 927 (1993), el Tribunal Supremo resumió la doctrina de la personalidad legal separada de la corporación y las circunstancias que ameritan o justifican que el tribunal descorra el velo corporativo, como sigue:
“Sabido es que una corporación tiene su propia personalidad jurídica y su propio patrimonio, distintos a la personalidad y al patrimonio de sus accionistas, sean estos últimos personas naturales o jurídicas. 14 L.P.R. A. see. 1106; Sucn. Santaella v. Srio. de Hacienda, 96 D.P.R. 442, 451 (1968); Sucn. Pérez v. Gual, 76 D.P.R. 959, 963 (1954); Swiggett v. Swiggett, Inc., 55 D.P.R. 76, 83 (1939). En consecuencia, la responsabilidad de los accionistas por las deudas y obligaciones de la corporación está generalmente limitada al capital que éstos hayan aportado al patrimonio de la corporación. Fletcher, supra, Vol. 1, Sec. 14, págs. 463-465; Fleming v. Toa Alta Development Corp., 96 D.P.R. 240, 244 (1968). ”
Sabido es, igualmente, que los tribunales descartarán la personalidad jurídica de una corporación y sujetarán el patrimonio de los accionistas para responder por las deudas y obligaciones de la corporación en aquellos casos en los cuales:
"... la corporación es meramente un 'alter ego' o conducto económico pasivo ('business conduit') de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los beneficios producidos por la gestión corporativa [y] si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara inequidad o mal ("wrong').” Cruz v. Ramírez, 75 D.P.R. 947, 954 (1954). Véanse, además: Fleming v. Toa Alta Development Corp., supra, pág. 243; San Miguel Fertilizer v. P.R. Drydock, 94 D.P.R. 424, 430 (1967); J.E. Candal & Co. v. Rivera, 86 D.P.R. 508, 513 (1962); Sucn. Pérez v. Gual, supra, págs. 963-964; Swiggett v. Swiggett, Inc., supra, pág. 85. (Énfasis suplido.)
De acuerdo a este principio, el Tribunal Supremo estableció que una corporación es el “alter ego” o conducto económico pasivo de sus accionistas cuando entre éstos y la corporación existe tal identidad de interés y propiedad que las personalidades de la corporación y de los accionistas, sean éstos personas naturales o jurídicas, se hallan confundidas, de manera que la corporación no es, en realidad, una persona jurídica independiente y separada. D.A.C.O. v. Alturas FI. Dev. Corp y Otro, supra, a la pág. 925, y casos allí citados.
La pregunta es ¿cuándo aplicamos este principio? Ello dependerá de los hechos y circunstancias específicas del caso particular a la luz de la prueba presentada. Cruz v. Ramírez, supra, a la pág. 954. El peso de la prueba descansa en la parte que propone la imposición de responsabilidad individual a los accionistas, y le corresponde al foro de primera instancia determinar, luego de apreciar la prueba, si procede el levantamiento del velo corporativo. Al examinar la prueba, el tribunal deberá observar la naturaleza de las transacciones corporativas para no dejarse engañar por las formalidades de las mismas. South P.R. Sugar Corp. v. Junta Azucarera, 88 D.P.R. 43, 57 (1963). La parte deberá presentar prueba que demuestre que no existe una separación adecuada entre la corporación y el accionista(s) y que los hechos son tales que reconocer dicha persona jurídica equivaldría a “promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen.” Srio. D.A.C.O. v. Comunidad San José, Inc., 130 D.P.R. 782, 798 (1992). Los tribunales no permitirán que bajo la apariencia de una transacción conforme a derecho- en este caso mediante el uso de la figura corporativa-, se persigan fines ilícitos o injustos. Srio. D.A.C.O. v. Comunidad San José, Inc., supra, a la pág. 798. El peso de la pmeba no se descarga con la mera alegación *976 de que la empresa es un “alter ego” de una persona o de otra empresa, sino con prueba concreta que demuestre que la personalidad de la corporación y la del accionista no se mantuvieron adecuadamente separadas. D.A.C.O. v. Alturas FL. Dev. Corp. y Otros, supra, a la pág. 927.
Los tribunales han considerado, entre otros, los siguientes factores al determinar si ha existido una separación adecuada entre la corporación y sus accionistas para fines de descorrer el velo corporativo: (1) el control del accionista sobre los asuntos corporativos, (2) el trato de los activos de la corporación como activos personales, (3) el retiro irrestricto del capital corporativo, (4) la mezcla de activos personales con activos corporativos, (5) la estructura de capital inadecuada de la corporación, (6) la falta de récords corporativos, (7) la inobservancia de formalidades corporativas, (8) la inactividad de los demás oficiales y directores, (9) la práctica de no declarar dividendos, (10) la presentación pública del accionista como personalmente responsable por las obligaciones de la corporación y (11) el manejo de la corporación sin atención a su personalidad independiente. D.A.C.O. v. Alturas Fl. Dev. Corp. y Otros, supra, nota 3; Carlos E. Díaz Olivo, supra, a la pág. 55.
También se han señalado que los tribunales deberán observar al determinar si procede o no descorrer el velo corporativo los siguientes factores: (1) no se han emitido acciones; (2) no tienen libros corporativos; (3) no tiene sello corporativo; (4) no tiene libros de contabilidad; (5) no celebra reuniones de directores ni accionistas; (6) no se sabe quienes son sus directores u oficiales y si se conocen, estos no ejercen función alguna en la corporación; (7) no tiene cuenta bancaria; (8) tiene cuenta bancada pero de la misma se expiden cheques para pagar gastos personales; (9) no rinden planillas anuales del Departamento de Estado; (10) no rinde planilla al Departamento de Hacienda; (11) no paga patente municipal y (12) no tiene empleados. Luis Mariano Negrón Portillo, Derecho Corporativo Puertorriqueño, Puerto Rico, Impresos Araya, 2da ed., 1996, a las págs. 437-438.
Por otro lado, el Tribunal Supremo de Puerto Rico resolvió recientemente el caso de Autoridad de Energía Eléctrica v. Maxon Engineering Services, Inc., _D.P.R._(2004), 2004 J.T.S. 199 en el cual en un caso de subasta de contrato de servicios estableció que:
“Ciertamente, en los contratos de servicios la evaluación de un licitador, no dehe estar orientada a la ficción de que la experiencia de los empleados es un concepto separado o diferente de la experiencia de la compañía. Después de todo, las personas jurídicas, como lo serían en este caso los proveedores de servicios para la rehabilitación de calderas, no pueden operar sino a través de seres humanos que le asisten, y que son éstos en ultima instancia, y no aquellos, los que pueden ejecutar acciones y acumular experiencia. Por ello, la necesidad de que en el momento en que se vaya a determinar si un licitador cumple con los criterios de experiencia previa, se tome en consideración las habilidades, conocimientos, destrezas y adiestramiento de aquellos que la forman, entiéndase, sus recursos humanos.” (Enfasis suplido) Autoridad de Energía Eléctrica v. Maxon Engineering Services, Inc., supra, a la pág. 491.
De esta forma el Tribunal Supremo dispuso claramente que en caso de subastas, como el de autos, es necesario la evaluación del licitador al establecer que en los casos de las personas jurídicas, es indispensable considerar los recursos humanos que la forman para poder establecer si la persona jurídica cumple con los requisitos necesarios para que se le adjudique la subasta.
V
Ciertamente, de lo antes expuesto surge que el precio no es el único factor a determinar por la Junta en la adjudicación de una subasta. La Junta tiene potestad en la ley y en su reglamento de examinar y considerar otros factores al,adjudicar una subasta. En el caso de autos, la Junta está proporcionando especial atención al factor de que Quality Services puede incumplir con el contrato que sea otorgado entre las partes. Tal conclusión está basada en el historial de incumplimiento de Grease Pit, una corporación cuyos miembros o recursos humanos son idénticos a los de Quality Services. Ciertamente, ello de por sí no es suficiente para descorrer el velo *977 corporativo y concluir que Quality Services es un alter ego de Grease Pit. Sin embargo, aún así y sin descorrer el velo, le corresponde a la Junta evaluar la capacidad del licitador para cumplir con el contrato de servicio de demolición. Al así hacerlo, la Junta debe considerar las habilidades, conocimientos, destrezas y adiestramiento de quienes la forman. Autoridad de Energía Eléctrica v. Maxon Engineering Services, Inc., supra, a la pág. 491.
En este caso, al examinar los recursos humanos de Quality Services, surge indiscutiblemente que éstos son los mismos que Grease Pit quien incumplió con un contrato de demolición para el Municipio de San Juan. Siendo ello así, la Junta no erró al concluir que no posee la seguridad de que éstos mismos recursos, a través de la persona jurídica de Quality Services, cumplirán con el contrato de demolición en esta ocasión. No debemos olvidar que en el juzgador, el sentido común tiene un papel preponderante, Villanueva v. Hernández Class, 128 D.P.R. 618, 653 (1991), Opinión concurrente Juez Asociado Negrón García, y que los jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería, Ruiz v. San Juan Racing Assn., 102 D.P.R. 45, 52 (1974).
VI
Por los fundamentos anteriormente expresados, se confirma la adjudicación de subasta emitida por la Junta.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria General Interina.
Mildred I. Rodríguez Rivera
Secretaria General Interina
ESCOLIO 2005 DTA 36
1. Las similitudes encontradas se resumen en:

“Grease Pit Industrial Parts and Services, Inc.

Presidente, Franco Acevedo

Secretario(a) Tesorero, Aida Ríos

Dirección Postal

P.O. Box 1288, Pueblo Station Carolina, PR 00986

Dirección Física

Suite 101 PMB 361, 220 Western Auto Plaza, Trujillo Alto, PR 00976

Teléfono

(787) 748-2535 / ((787) 748-4160

Fax

(787) 748-2995

Tel/Fax

(787) 761-8880

Incorporación

*978
1998

Oficiales Empleados

José R. León Torres

Proyecto

Subasta Núm. 1999/354

Adquisición de Servicios de Demolición de Estructuras en Municipio de San Juan

1rst Quality Services, Corp.

Franco Acevedo

Aida Ríos

P.O. Box 1288, Pueblo Station Carolina, PR 00986

Calle Adelina Hernández #23 Barrio Las Cuevas, Trujillo Alto, PR 00976

(787) 761-8880

(787) 748-2535

2002

José R. León Torres

Subasta Núm. 2004/089

Servicios de Demolición de Estructuras para el Municipio de San Juan"