Ralph S. Swiggett y Mary Anna Swiggett, demandantes y apelados, *v.* Swiggett, Inc., demandada y apelante.

Núm. 7592.—*Sometido:* Enero 20, 1939.   *Resuelto:* Junio 9, 1939.

*Edmond Block,* abogado de la apelante; *Dubón & Ochoteco,* abogados de los apelados.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Los demandantes instituyeron este pleito en cobro de ciertas cantidades que alegan fueron prestadas por Mary Anna Swiggett a la corporación demandada, Swiggett, Inc. La demanda expone dos causas de acción. La primera alega que los demandantes son marido y mujer y que allá por el mes de septiembre de 1934 Mary Anna Swiggett dió a préstamo a la demandada, en cuatro diferentes partidas, sumas que montan a la cantidad de $2,500. Que por cada una de dichas partidas la demandada suscribió y entregó a la demandante una obligación por igual suma, pagadera a la vista.

Que no obstante sus requerimientos de pago, dicha deuda no ha sido satisfecha ni en todo ni en parte. La segunda causa de acción alega que el 26 de septiembre de 1934 (debe ser noviembre) la misma demandante dió a préstamo a la corporación demandada la suma de $2,500 en un cheque que por igual cantidad recibió de W. R. Bennett en pago del precio de venta de 51 acciones que dicha demandante poseía en el capital social de la demandada. Que por convenio de las partes la cantidad prestada debería ser devuelta tan pronto lo requiriese la demandante y que a pesar de las gestiones de cobro realizadas por ésta, no le ha sido satisfecha ni en todo ni en parte.

Contestando la demandada la primera causa de acción, admitió la capacidad de las partes; negó que en septiembre de 1934 o en cualquier otra fecha la demandante le hubiera dado a préstamo la cantidad de $2,500 y negó también haber suscrito y entregado los pagarés que se describen en dicha primera causa de acción; negó además que no haya sido satisfecho el importe de dicho préstamo, y que le hubieran hecho los requerimientos de pago a que se refiere la demanda.

Como defensa especial, no obstante la alegación anterior, aceptó la demandada haber suscrito, en septiembre de 1934, por su entonces Tesorero Ralph S. Swiggett, esposo de la demandante, cuatro pagarés—expresando fechas y valor de cada uno—que montan a $2,500; pero que habiendo sido satisfechos dichos pagarés, su tenedora, Mary Anna Swiggett, los canceló y devolvió a la demandada. Repite la negativa de los requerimientos de pago.

Contestando la segunda causa de acción, negó la demandada que la demandante le hubiese prestado los $2,500 a que se refiere dicha causa de acción, y como defensa especial alegó: que en o alrededor del 26 de septiembre (debe ser noviembre) de 1934, Mary Anna Swiggett entregó a la demandada un cheque por $2,500. Que dicho cheque procedía del precio de 50 acciones de la corporación demandada que W. R. Bennett había comprado a la demandante. Que la

mencionada suma había sido acreditada a la cuenta de la Sra. Swiggett con la demandada y que el mismo día 26 de noviembre de 1934, o alrededor de esa fecha, la propia demandante autorizó a la corporación demandada para que debitara o cargara a su cuenta dicha suma de $2,500, porque era la intención de Mary Anna Swiggett cancelar como canceló la obligación de devolverle dicha cantidad, constando dicha autorización en una carta suscrita por la demandante, fechada el 26 de noviembre de 1934, dirigida a la demandada, transcrita en la contestación. Negó además la demandada haber sido requerida para el pago de dicha cantidad.

Fué el caso a juicio y la corte, por los méritos de las alegaciones y la evidencia, declaró con lugar la demanda en sus dos causas de acción y en su consecuencia condenó a la demandada a pagar a la demandante la cantidad de $4,577, montante de las sumas reclamadas en las dos causas de acción, luego de deducir la cantidad de $423 que la demandante adeudaba a la demandada. Condenó a la demandada además al pago de intereses legales sobre los $4,577, importe de la sentencia, desde la interposición de la demanda hasta el día de su pago, más las costas del litigio sin incluir honorarios de abogado.

Apeló la demandada, y en un alegato de 91 páginas, imputa a la corte sentenciadora la comisión de once errores, a saber:

"1. La Corte erró al dejar de declarar y decidir que Swiggett, Inc., durante el año de 1934, hasta noviembre de aquel año, era, en contemplación de la ley, abierta y exclusivamente, propiedad de la demandante Mary Anna Swiggett.

"2. La Corte erró al resolver como cuestión de derecho que los $2,500 entregados a Swiggett, Inc. durante el mes de septiembre de 1934 constituyeron un 'préstamo'.

"3. La Corte erró al no declarar ni decidir que el 26 de noviembre de 1934 y durante varios meses con anterioridad a esa fecha, Swiggett, Inc. estaba insolvente.

"4. La Corte erró al considerar probado y resolver que en noviembre 26 de 1934 Mary Anna Swiggett prestó a Swiggett, Inc. la suma de $2,500 u otra suma cualquiera.

"5. La Corte sentenciadora sostuvo que 'la evidencia no arroja ninguna transacción, pacto o convenio que las partes pudieran haber hecho en cuanto a la cancelación de estas obligaciones.' También sostuvo: 'El hecho cierto es que los pagarés no fueron cancelados por consideración alguna.' Todo ello fué error.

"6. La Corte cometió error al no decidir que la cancelación de noviembre 26 de 1934, *exhibit* 5, y los endosos en los *exhibits* 1, 2, 3 y 4, fueron auténticos y debidamente otorgados.

"7. La Corte erró al sostener que para los endosos de cancelación en los *exhibits* del 1 al 4, inclusives, aún considerándolos como contratos independientes, no hubo consideración.

"8. La Corte erró al sostener que las cancelaciones contenidas en los *exhibits* 1 al 5, inclusives, considerados como transacciones independientes, no fueron válidas condonaciones de deuda.

"9. La Corte erró al conceder costas a los demandantes.

"10. La Corte erró al no declarar que los demandantes están impedidos para reclamar, como debidas a ambos, o a Mrs. Swiggett, las sumas mencionadas en las dos causas de acción o en cualquiera de éstas.

"11. La Corte erró al dictar sentencia en favor de los demandantes."

Gran parte de los errores señalados por la apelante se refieren a la apreciación de la prueba y están tan relacionados entre sí que de considerárseles separadamente en el orden establecido por la apelante, incurriríamos en innecesarias repeticiones. Los discutiremos conjuntamente, considerando por separado las dos causas de acción.

■ La primera, como hemos visto, tiene por objeto el cobro de los $2,500 que en distintas partidas alega haber prestado Mary Anna Swiggett a la corporación demandada en varios días del mes de septiembre de 1934 y por las cuales la deudora suscribió y le entregó los pagarés marcados *exhibits* 1 al 4 inclusives, que ascienden a la cantidad de $2,500.

En la contestación enmendada negó la demandada el préstamo, así como la existencia de los pagarés; pero en

el siguiente párrafo y bajo el epígrafe de "Defensas Especiales", aceptó haber suscrito y entregado los cuatro pagarés en cuestión, alegando a la vez que habiendo sido satisfechos, la demandante los canceló y devolvió a la demandada.

Declaró Mary Anna Swiggett que los $2,500 que prestó a la demandada en septiembre de 1934 los obtuvo, mediante un préstamo que hizo, de Barbara Swiggett, y que recibió dicha suma por conducto del Royal Bank of Canada. Resultó además de la evidencia no controvertida de la demandante que las distintas partidas entregadas entre el 12 y el 24 de septiembre de 1934 fueron ingresadas en la cuenta que en el Banco tenía la demandada y aparecían en la libreta de banco que llevaba ésta como parte de su contabilidad. De no ser cierta esta evidencia de la demandante, fácil hubiera sido a la demandada impugnarla con sólo recurrir a los records del Banco. Pero no sólo no lo intentó siquiera, sino que en su declaración el Sr. Bennett, que en realidad de verdad puede ser considerado como la persona perjudicada por la acción, admitió que el préstamo de los $2,500 no era ficticio o simulado (récord, pág. 86), a pesar de que antes (récord, pág. 61), dijo que esa obligación era ficticia. Y aun cuando al calce de cada uno de los pagarés el Sr. Bennett, tres meses después de comprar las acciones y con el consentimiento expreso de la Sra. Swiggett, extendió una nota en maquinilla, fechada el 26 de noviembre de 1934, expresiva de que los pagarés habían sido cancelados como parte del contrato de compra a la señora Swiggett de las cincuenta acciones de la corporación, de la prueba resulta que los cuatro pagarés no han sido satisfechos y que la cancelación de los mismos no puede ser sostenida por falta de causa.

Sostiene la Sra. Swiggett que nada recibió en pago de dichas obligaciones y que no es cierto que la cancelación de las mismas fuera parte del contrato de compraventa de las 50 acciones. No pudo negar el Sr. Bennett esta aseveración de la demandante, pues él mismo, repetidas veces, manifestó

en el curso de su declaración que se enteró por primera vez de la existencia de esta deuda a favor de la demandante alrededor de tres meses después de haberle comprado las acciones. Claro es que en tales circunstancias la cancelación de dichos pagarés no pudo ser parte de un contrato celebrado tres meses antes de conocer su existencia. Siendo ello así, la causa que se expresó en la nota de cancelación de cada uno de dichos pagarés es una causa o consideración falsa, y siendo falsa la causa, la cancelación es nula a menos que el Sr. Bennett probare que estaba fundada en otra causa verdadera y lícita. Artículo 1228 del Código Civil (ed. 1930).

Es la demandada quien exige el cumplimiento de lo expresado en las notas de cancelación y habiéndose probado que la causa en ellas expresada es falsa, incumbe a la demandada probar que existió otra causa o consideración verdadera y lícita.

A este efecto dice Manresa:

"En el supuesto de causa falsa, la prueba de que lo es corresponde al deudor o al obligado recíprocamente que no quiera cumplir el contrato, ya que la falsedad no puede presumirse, y *una vez demostrado esto, le corresponde al acreedor, o sea al que exige el cumplimiento de lo convenido,* acreditar que hubo otra causa verdadera y lícita." 8 Manresa, Código Civil, ed. 1907, págs. 682–683. (Bastardillas nuestras.)

Explicando la demandante por qué firmó en blanco, según ella, al calce de dichas obligaciones, y las entregó al Sr. Bennett, dijo que lo hizo temiendo que su esposo, Ralph S. Swiggett, fuese dejado cesante por el Sr. Bennett. Pero no aparece de la prueba que ella celebrase pacto o convenio alguno obligándose a cancelar dichos pagarés en consideración a que el Sr. Bennett mantuviese al Sr. Swiggett en su colocación. Por el contrario, lo que resulta de la declaración del propio Sr. Bennett es que él se indignó al conocer la existencia de los pagarés, e, imputando fraude a los Sres. Swiggett, les exigió su cancelación.

La demandada no ha demostrado que existiera otra causa o consideración lícita y verdadera para la cancelación de los pagarés, que como hemos visto, representan una deuda legítima, que si no fué conocida por el Sr. Bennett al tiempo de comprar las acciones en noviembre de 1934, no fué por ardid u ocultación alguna de los demandantes, puesto que el crédito constaba claramente en los libros de la corporación, que bien pudo y debió examinar el Sr. Bennett antes de hacer el negocio.

Si en ausencia de ocultación o fraude, a un contratante que pudiendo no examina la cosa objeto del contrato se le permitiese repudiarlo al advertir en ella cualquier vicio o defecto, que de haberla examinado antes fácilmente hubiera descubierto, el cumplimiento de las obligaciones contractuales estaría a merced de la voluntad o capricho del obligado.

Sostiene la demandada que como en el mes de septiembre de 1934, fecha en que tuvo efecto el alegado préstamo, la demandante era dueña de 98 de las 100 acciones de la corporación demandada, erró la corte inferior al reconocer la existencia corporativa de Swiggett, Inc., y al no estimar que Mary Anna Swiggett y Swiggett, Inc., eran la misma persona, y que no pudiendo en una misma persona coexistir la condición de deudor y acreedor, no debió sostener la validez del crédito de $2,500.

La regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas, no puede ser ignorada o descartada (*disregarded*). La ficción que reconoce personalidad jurídica a la corporación independientemente de sus accionistas, se introdujo en la ley por motivos de conveniencia para promover los fines de la justicia; pero cuando la existencia corporativa se usa como un medio de amparar el fraude o subvertir los fines de la justicia, en tales casos deben los tribunales echar a un lado la ficción y negarle personalidad como entidad distinta de sus accionistas. El solo hecho de que una persona natural posea todas las

acciones de una corporación, no autoriza a los tribunales para ignorar la existencia de esta última como persona jurídica distinta de la persona natural dueña de sus acciones.

De una monografía sobre la materia en 1 A.L.R. 610, 611, tomamos lo siguiente:

"El siguiente caso ilustra la importancia de la regla que sostiene que la existencia corporativa no debe ser ignorada. En *Buffalo Loan, Trust & S. D. Co.* v. *Medina Gas & E. L. Co.* (1896) 12 App. Div. 199, 42 N. Y. Supp. 781, la División de Apelación (*the Appellate Division*), en un caso en que el dueño de prácticamente todas las acciones de una corporación había negociado sus bonos, dijo: 'En vista del hecho de que Stranahan era prácticamente el dueño de todas las acciones de la corporación y que virtualmente la corporación era su propiedad privada, a la luz de todas las circunstancias probadas con respecto a sus transacciones, la corte no debe llevar muy lejos la regla de que una corporación es una entidad legal con vida separada e independiente de las personas naturales que la integran. "La manifestación de que una corporación es una persona o entidad artificial, independiente de sus miembros, es una mera descripción en lenguaje figurado de una corporación considerada como un cuerpo colectivo; una corporación es en realidad una asociación de personas y ningún *dictum* judicial o precepto legislativo puede alterar este hecho." Morawetz, Priv. Corp., sec. 227. De manera, pues, que la idea de que una corporación puede ser una entidad separada en el sentido de actuar independientemente de las personas naturales que la componen, o de abstenerse de actuar cuando es el deseo de ellas que actúe, no está basada en la razón ni en autoridad, y es contraria a la realidad. (Citas.)' Pero la Corte de Apelaciones, al confirmar la sentencia por otro fundamento en (1900) 162 N. Y. 67, 56 N. E. 505, dijo: 'Sostener que Stranahan estaba en posesión legal de los bonos, de modo que podía pignorarlos en garantía colateral de su deuda personal con el fideicomisario (*trustee*) de la hipoteca que garantizaba los bonos, porque fuera "prácticamente el dueño de todas las acciones" de la corporación, equivale a confundir los poderes de la corporación como una entidad legal con las facultades de sus accionistas. Stranahan no actuó como secretario de la compañía al disponer de los bonos, y el hecho de poseer él una gran parte de las acciones, no le autoriza para transmitir un título válido de la propiedad perteneciente a la corporación. El título a la propiedad de una compañía pertenece a la entidad llamada la "corpo-

ración'', y aunque todas las acciones pertenezcan a una sola persona, ésta no puede enajenar o afectar el título legal de la corporación. Morawetz, Priv. Corp., sec. 223. La administración completa de todos los asuntos de una corporación es delegada por sus accionistas en manos de un agente de la corporación. Solamente los oficiales y agentes regulares cuyos nombramientos han sido provistos expresa o implícitamente por las cláusulas de incorporación, tienen autoridad de actuar en su representación. Los accionistas individuales, como tales, carecen de facultades para representarla, para demandar en su nombre o para intervenir en cualquier forma con su administración. Morawetz, Priv. Corp., sec. 238. Como oficial de la compañía, Stranahan tenía en su poder los bonos para levantar fondos para fines de la corporación y al usarlos para su particular beneficio actuó ilegalmente y sin título alguno.' ''

En otra monografía que sobre la misma materia aparece en 34 A.L.R. 597, suplementando la anteriormente aludida, se cita el caso de *Minifie* v. *Rowley,* (1921) 187 Cal. 481, 202 P. 673, donde se dijo:

''Para que los actos y obligaciones de una corporación puedan considerarse como actos de una persona particular y viceversa, las siguientes circunstancias deben concurrir: Primero: Que la corporación no sólo esté influenciada y gobernada por esa persona, sino que haya entre ellas, tal identidad de interés y propiedad, que la corporación y la persona se hallen confundidas; segundo: que los hechos sean de tal naturaleza que el sostener la ficción de dos entidades distintas, bajo las circunstancias especiales del caso, equivalga a sancionar un fraude o promover una injusticia.''

En el caso que nos ocupa, podríamos admitir a los fines de la discusión que existe la primera de las dos circunstancias apuntadas por la Corte Suprema de California, pues es un hecho no controvertido que en septiembre de 1934 Mary Anna Swiggett poseía el 98 por ciento de las acciones de la corporación y era su presidenta; pero no hay el más ligero indicio de prueba al efecto de que el préstamo fuera simulado o que las circunstancias del caso sean tales que al sostener el derecho de la demandante a obtener su devolución, sancionemos un fraude o cometamos una injusticia.

A nuestro juicio, no cometió error alguno la corte sentenciadora al declarar con lugar la demanda en cuanto a la primera causa de acción.

■■ Pasemos ahora a la segunda.

Revela la prueba que allá por el año 1934 la vida comercial de la corporación demandada se desenvolvía lánguidamente afrontando frecuentemente dificultades económicas en el cumplimiento de sus compromisos corrientes. De ahí que la Sra. Swiggett hubiera tenido que recurrir en el mes de septiembre a Barbara Swiggett en solicitud del préstamo a que se contrae la primera causa de acción y que en ocasiones anteriores hubiera hecho lo mismo apelando con igual objeto al Sr. Bennett, antiguo amigo de la familia Swiggett. Fué con motivo de una de estas dificultades que en el mes de noviembre de 1934 los Sres. Swiggett solicitaron del Sr. Bennett un préstamo para la corporación. El Sr. Bennett, que no consideraba suficientemente garantizado su dinero por la forma en que el Sr. Swiggett administraba la corporación, les manifestó que él no estaba dispuesto a hacer el negocio sin tener él el control de la corporación, y fué así que concibió la idea de adquirir la mayoría de las acciones, comprando a la Sra. Swiggett 50 ó 51 de las 98 que ella poseía. Compró dichas acciones por precio de $2,500. Según el Sr. Bennett, como antes hemos indicado, fué condición del contrato que al recibir la Sra. Swiggett el precio de las acciones vendidas, lo ingresaría en la corporación como una propiedad de esta última para hacer frente a ciertos compromisos pendientes.

Según la versión de la Sra. Swiggett, fué convenido entre las partes que si bien debería facilitar los $2,500 a la corporación, sería en calidad de préstamo solamente.

Claro es que si la preponderancia de la prueba demuestra que la versión de la Sra. Swiggett es la verdadera, es decir, que ella había de entregar y que en efecto entregó a la corpo-

ración los $2,500 en calidad de préstamo, la sentencia, en lo que respecta a la segunda causa de acción, deberá ser confirmada.

Si, por el contrario, la versión del Sr. Bennett fué lo convenido entre las partes y el contrato estuvo fundado en una causa lícita, en tal caso la sentencia apelada, en cuanto a la segunda causa de acción, es errónea y procede su revocación.

A primera vista parece lógico y justo que siendo la Sra. Swiggett la dueña de las acciones, al vender un número de ellas al Sr. Bennett, su precio pertenezca a la vendedora y no a una entidad distinta, como lo es la corporación demandada. Pero existen en este caso circunstancias que inclinan la balanza de la prueba a favor del Sr. Bennett. Ya conocemos la situación económica por que atravesaba la corporación cuando en el mes de noviembre de 1934 compró Bennett las acciones. El estado económico de la compañía hacía que sus acciones, cuyo valor nominal era de $100 cada una, tuviesen un valor tan inferior que el Sr. Bennett trató de probar que era de $9 cada una, a lo que se opusieron los demandantes, siendo sostenidos por la corte; y que aun los propios demandantes, en su prueba de refutación (*rebuttal*), llamasen al Sr. Swiggett a la silla testifical con el fin de probar que las acciones en noviembre de 1934 tenían un valor de $45 cada una, o sea un 45 por ciento del precio que el Sr. Bennett había pagado por ellas. De modo, pues, que al vender la Sra. Swiggett las 50 acciones a Bennett y venir el precio a engrosar el capital de la corporación, las 48 acciones que le quedaron a ella subieron considerablemente de valor. Al mismo tiempo se interesó en la corporación una persona que por su posición económica podía ayudarla a desenvolverse en las dificultades que frecuentemente se le presentaban. Pero aparte de estas consideraciones existe además otra circunstancia que milita fuertemente a favor de la versión de Bennett, y es que el mismo día 26 de noviembre, en que

tuvo efecto la venta de las acciones, la Sra. Swiggett dirigió a la demandada la siguiente carta:

"Swiggett, Inc.,
"San Juan, Puerto Rico.

"Señores:

"En el día de hoy les he entregado un cheque por dos mil quinientos dólares ($2,500.00) que he recibido de W. R. Bennett en pago de cincuenta acciones de esa corporación. Ustedes han acreditado a mi cuenta esa cantidad. El objeto de esta carta es autorizarles y ordenarles que carguen (*debit*) a mi cuenta dicha suma por ser mi deseo cancelar y por la presente cancelo dicha obligación.

"Atentamente,

" (Fdo.) Mary Anna Swiggett."

(Demandada, *exhibit* 5.)

Esta carta fué presentada en evidencia por la demandada sin oposición de los demandantes, quienes admitieron la autenticidad de la firma de Mary Anna Swiggett, que aparece suscribiéndola. Esta carta no armoniza con la versión de la Sra. Swiggett, y en vano hemos escudriñado el récord en busca de una explicación del motivo o causa que la impulsara a escribirla. Podemos explicárnosla solamente aceptando como cierta la versión del Sr. Bennett, pues si los $2,500 hubieran sido facilitados a la corporación en calidad de préstamo, como alega la Sra. Swiggett, indudablemente que esta carta no hubiera sido escrita en ningún momento.

La preponderancia de la prueba tiende a demostrar que la versión de Bennett es la correcta, es decir, que fué convenido entre las partes que el precio de las cincuenta acciones compradas a la Sra. Swiggett ingresaría en las arcas de la corporación como capital exclusivo de dicha entidad jurídica. La cuestión que surge ahora es la siguiente: ¿Existió causa en este contrato? A este respecto conviene recordar que al tiempo de celebrarse este contrato la situación económica por que atravesaba la corporación era en extremo precaria, de tal suerte que frecuentemente carecía de dinero con que hacer frente a sus compromisos corrientes, faltán-

dole a veces efectivo para retirar del *express* la mercancía que recibía de los Estados Unidos. La propia señora Swiggett algún tiempo antes tuvo que solicitar de Bárbara Swiggett que le prestase los $2,500 de la primera causa de acción para hacer frente a compromisos del negocio. De seguir en esas condiciones los asuntos de la corporación, ¿qué otra cosa que no fuera la quiebra o el desastre podía esperar? Y si esto hubiera sucedido, ¿adónde hubieran ido a parar las 98 ó 99 acciones de la Sra. Swiggett? Fué en estas precarias circunstancias que los $2,500 de Bennett vinieron a alimentar, a dar vida, por decirlo así, a la corporación que, exhaustas ya sus fuerzas económicas, amenazaba desplomarse, quizá para no levantarse más. ¿No era el ingreso de ese dinero en el tesoro de la corporación causa suficiente para que la Sra. Swiggett se desprendiese de la mitad de sus acciones para salvar así la otra mitad que retenía? La Sra. Swiggett, al hacer ese negocio, recibía un beneficio. Ese servicio prestado por Bennett, sea grande o sea pequeño, tanto en el Derecho Civil como en la Ley Común, constituye *causa* o consideración lícita y suficiente para la validez del contrato. Artículo 1226 del Código Civil, edición 1930. En cumplimiento de ese contrato fué que la Sra. Swiggett escribió la carta de 26 de noviembre, supra, por la que canceló el crédito de $2,500 objeto de la segunda causa de acción, crédito que indebidamente se le había reconocido en los libros de la corporación demandada. A este efecto ha dicho Manresa, comentando el concepto de la *causa* en el Derecho Civil español:

". . . Esa presunción hace muy difícil la alegación de que falta *causa* en contratos como la compraventa o la permuta, que, imponiendo obligaciones recíprocas, llevan en sí mismos la causa suficiente, necesitándose prueba, que no medió precio o *no se dió cosa alguna*, para reputarlos faltos de aquélla." 8 Manresa, Código Civil, ed. 1907, pág. 678. (Bastardillas nuestras.)

Para un estudio histórico y comparativo de la *causa* en el Derecho Civil y la *consideración* de la Ley Común, véanse

el artículo del Profesor Corbin, de la Universidad de Yale, publicado en 50 Harvard Law Review 449, titulado *"Recent Development in Contracts"*, y el de Sir William Searle Holdsworth, Profesor de Derecho de la Universidad de Oxford, titulado *"The Modern History of the Doctrine of Consideration,"* publicado originalmente en 2 Boston University Law Review, págs. 87, 174, y reproducido en la página 61 y siguientes de la obra *"Selected Readings on the Law of Contracts"*, publicada bajo los auspicios de *The Association of American Law Schools.*

De la evidencia no resulta que el capital que en la corporación tenía la Sra. Swiggett tuviese el carácter de privativo. Por el contrario, debemos presumir que tiene carácter de ganancial, puesto que la demanda se presentó a nombre de Mary Swiggett y su esposo Ralph S. Swiggett. Si fuera bien privativo, indudablemente el esposo no hubiera sido parte en este pleito: Artículo 54, Código de Enjuiciamiento Civil, ed. 1933.

*Procede, por lo expuesto, confirmar la sentencia en cuanto declaró con lugar la primera causa de acción, revocarla en cuanto a la segunda, y condenar a la demandada, Swiggett, Inc., por concepto de la primera causa de acción, a pagar a los demandantes la cantidad de $2,077 de principal, luego de deducida la suma de $423 adeudada a la demandada por Ralph S. Swiggett, esposo de la demandante, con más intereses legales desde la interposición de la demanda y las costas, sin incluir honorarios de abogado.*

El Juez Asociado Sr. Wolf está conforme con el resultado de esta sentencia y con parte de la opinión en cuanto se refieren a la primera causa de acción y disiente en cuanto a la segunda causa de acción.*

El Juez Asociado Sr. Hutchison está conforme con la opinión en cuanto confirma la sentencia apelada en relación con la primera causa de acción y disiente en cuanto la revoca en relación con la segunda causa de acción.*

---

* Nota: Véase el prefacio.