ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CONSEJO DE TITULARES ASOCIACION DE CONDOMINES 101 MENDEZ VIGO RECURRIDO<br><br>v.<br><br>SUCESION MARIO GARCIA QUINTERO Y OTROS PETICIONARIO | KLCE202301064 | Recurso de apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2018CV00418<br><br>Sobre: COBRO DE DINERO |

Panel integrado por su presidenta, la Juez Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de febrero de 2024.

Comparecen ante nosotros los peticionarios codemandados, Sucesión Mario García Quintero y Sucesión Anunciata Incera, mediante recurso de *Certiorari*. Ambas sucesiones son compuestas por Mario J. García, Mario O. García, José Oscar y María del Pilar, todos de apellido García Incera (en adelante, ¨peticionarios¨). Los codemandados peticionarios solicitan que se revoque una *Resolución* del Tribunal de Primera Instancia, Sala de Mayagüez (en adelante, ¨TPI¨), declarando no ha lugar una *Moción de Sentencia Sumaria*.

Mediante la solicitud de Sentencia Sumaria, los peticionarios: (1) alegaron que el administrador del Condominio no está autorizado en Ley para representar al Consejo de Titulares; (2) cuestionaron si la cancelación del certificado de incorporación traspasa la

titularidad de los inmuebles de la corporación; (3) cuestionaron si los accionistas de las corporaciones son responsables de las deudas de las corporaciones, y; (4) si la cancelación de los certificados de incorporación tiene el efecto de disolver las corporaciones.

Luego de examinar *de* novo la moción de sentencia sumaria denegada en la Resolución recurrida, considerar el trasfondo procesal del caso, según surge del expediente apelativo, y las normas jurídicas que rigen la materia del litigio, resolvemos expedir el auto solicitado y confirmar tal decisión.

Veamos los antecedentes fácticos y procesales del recurso que sirven de fundamento a esta determinación.

**I.**

Los hechos de este caso se remontan a una demanda de cobro de dinero presentada el 13 de noviembre de 2018 por el Consejo de Titulares del Condominio 101 Méndez Vigo Oeste (en adelante, ¨recurridos¨) en contra de Mario García Quintero, Anunciata Incera y la Sociedad Legal de Gananciales compuesta por ambos.

La controversia medular del caso presentado ante el TPI gira en torno al cobro de dinero de unas cuotas de mantenimiento adeudadas por las corporaciones, Northwestern Trading, Corp., Inc. y Northwestern Resources Development, Corp. (en adelante, ¨corporaciones¨) a el Consejo de Titulares del Condominio 101 Méndez Vigo Oeste.

Las cuotas de mantenimiento adeudadas correspondían a las oficinas 504, 505, 702, 703, 707 y 708 del Condominio 101 Méndez Vigo Oeste que figuraban inscritas en el Registro de la Propiedad a favor de las corporaciones.

Respecto a las corporaciones mencionadas, el señor García Quintero y la señora Incera figuraban ante el Departamento de Estado como los únicos accionistas y directores de las

corporaciones. El 16 de abril de 2014 los certificados de incorporación de las corporaciones fueron cancelados por el Departamento de Estado por incumplimiento con su responsabilidad anual de rendir informes para los años 2008 y 2012. No obstante, los pasivos y activos de la corporación no fueron liquidados ni las corporaciones disueltas.

Desgraciadamente, la señora Anunciata Incera falleció el 22 de febrero de 2019. Pocos meses después, murió el señor Mario García Quintero, el 9 de mayo de 2019. Como consecuencia, la parte demandante recurrida presentó una *Demanda Enmendada* para traer al pleito como codemandados a los cuatro hijos procreados entre el señor García Quintero y la señora Incera, siendo estos los únicos herederos de las sucesiones de ambos fallecidos.

Luego de varios trámites procesales, que no es necesario pormenorizar para poder disponer del caso, los codemandados peticionarios presentaron el 21 de abril de 2021 una *Moción de Desestimación al amparo de la Regla 10.2 de Procedimiento Civil.* En esta, argumentaron que procedía la desestimación de la demanda porque el Administrador del Consejo de Titulares, el Ing. Ángel Luis Ruperto, no estaba autorizado para representar al Consejo en la acción judicial. Examinada la moción de desestimación, el TPI emitió una *Resolución* el 11 de mayo de 2021 declarando No Ha Lugar la referida moción.

El pleito siguió su transcurso y, para efectos de la presente controversia, el 21 de febrero de 2023 los codemandados peticionarios presentaron una *Moción de Sentencia Sumaria.* En dicha moción hicieron los siguientes planteamientos: (1) alegaron que el administrador no está autorizado en ley para presentar la demanda en representación del Consejo de Titulares; (2) cuestionaron si la cancelación de los certificados de incorporación traspasó la titularidad de las oficinas; (3) cuestionaron si los

accionistas de las corporaciones son responsables de las deudas, de existir alguna, de las corporaciones; y (4) si la cancelación de los certificados de incorporación tuvo el efecto de disolver las corporaciones. En respuesta, la parte demandante recurrida presentó su *Oposición a Sentencia Sumaria* el 30 de marzo de 2023.

Así las cosas, el 30 de mayo de 2023 el TPI dictó una *Resolución* declarando No Ha Lugar a la moción de sentencia sumaria por entender que las determinaciones de hechos eran insuficientes para adjudicar la controversia. Mediante su dictamen, el foro primario determinó que los siguientes hechos no estaban en controversia:

1. Las oficinas 504 y 505 pertenecen en pleno dominio a Northwestern Trading conforme las constancias del Registro de la Propiedad.

2. Las oficinas 702, 703, 707 y 708 pertenecen en pleno dominio a Northwestern Resources conforme las constancias del Registro de la Propiedad.

3. Los únicos y universales herederos de Don Mario García Quintero y Doña Anunciata Incera son los codemandados María José, María del Pilar, José Oscar y Mario Oscar todos de apellidos García Incera.

4. El Sr. Mario García Quintero y la Sra. Anunciata Incera eran los únicos accionistas y directores de las corporaciones Northwestern Trading y Northwestern Resources.

5. Los certificados de incorporación de las corporaciones Northwestern Trading y Northwestern Resources fueron cancelados por el Departamento de Estado por incumplimiento con su responsabilidad anual para los años 2008 al 2012.

Sin embargo, determinó que las aludidas determinaciones no eran suficientes para dictar sentencia sumaria. Específicamente, el foro apelado señaló que se encontraba impedido de adjudicar el

asunto por la vía sumaria porque el certificado de incorporación de las corporaciones fue cancelado y las corporaciones aún no habían sido disueltas. Por tal razón, era necesario la designación de un administrador judicial para que iniciara el proceso de disolución. A eso, añadieron que los únicos accionistas y directores fallecieron, quedando solo su sucesión.

Inconformes, el 14 de junio de 2023 los codemandados peticionarios, Mario J. García, Mario O. García y María del Pilar García, presentaron una *Moción de Reconsideración*. El 23 de agosto de 2023 los demandantes peticionaros presentaron su *Oposición a moción de reconsideración.*

Una vez expresadas las partes, el TPI dictó una *Resolución* el 24 de agosto de 2023, archivando en autos copia de la notificación el 25 de agosto de 2023, donde dictó No Ha Lugar la moción de reconsideración.

Inconformes, el 25 de septiembre de 2023 los codemandados peticionarios, acuden ante nosotros mediante recurso de *Certiorari* solicitando que revoquemos la resolución dictada por el TPI. Realizan los siguientes señalamientos de error:

> **PRIMER ERROR: Erró el TPI al determinar que la autoridad del Administrador Ing. Ángel Luis Ruperto para representar al Consejo de Titulares es un asunto que ya fue atendido y resuelto por el Tribunal, determinación que advino final y firme.**
> **SEGUNGO ERROR: Erró el TPI al no desestimar la demanda en cuanto a los comparecientes peticionarios ya que la demandante está impedida por ley para radicar la demanda contra los accionistas.**
> **TERCER ERROR: Erró el TPI al nombrar un administrador judicial para unas corporaciones que no son parte del pleito.**
> **CUARTO ERROR: Erró el TPI al entender que las corporaciones Northwestern Trading y Northwestern Resources Dev. Co. carecen de personalidad jurídica y que por lo tanto los accionistas eran responsables de las alegadas deudas de existir las mismas y que a raíz del deceso de estos, las mismas pasan a los comparecientes.**

El 19 de octubre de 2023, la parte recurrida presentó su *Oposición al Certiorari*. En síntesis, solicitó que se deniegue el

recurso debido a que los fundamentos de los peticionarios son contrarios a Derecho.

## II.

### A. El *Certiorari*

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra; Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> [e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra

situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari,* la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari,* a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.,* 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión

justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B. Regla 36 de Procedimiento Civil - Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, [...] permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones donde no exista controversia material de hecho que requiera ventilarse en un juicio plenario, y el derecho así lo permita. *León Torres v. Rivera Lebrón,* 204 DPR 20 (2020). Mediante el mismo, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *Íd.* Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Íd.*

[A]l presentar una moción de sentencia sumaria, al amparo de [la] Regla 36.2, [se] deberá cumplir con los siguientes requisitos de forma, los cuales están preceptuados en la Regla 36.3 de Procedimiento Civil: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia

donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Pérez Vargas v. Office Depot/Office Max, Inc.,* 203 DPR 687 (2019).

Al considerar la solicitud, el Tribunal deberá asumir ciertos los hechos no controvertidos que se encuentran sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). La inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.,* pág. 625. Conforme a esta normativa procesal, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón,* supra. Por el contrario, viene obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de la misma proceder en derecho. *Íd.*

En la oposición a una solicitud de sentencia sumaria, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *Íd.* Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* Al evaluar los méritos de

una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *Id.*

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o aquellos en los que estén presentes cuestiones de interés público". *Id.*, pág. 579.

Por otro lado, sabido es que, cuando un Tribunal emita una sentencia, especificará los hechos que fueron probados y consignará separadamente sus conclusiones de derecho. 32 LPRA Ap. V, R. 42.2. En lo pertinente al caso, si el Tribunal deniega una moción de sentencia sumaria, no concede todo el remedio solicitado o no resuelve la totalidad del pleito, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, expresa que "será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos […]"Lo anterior simplifica el desfile de prueba en el juicio, pues los hechos no controvertidos se consideran probados. *Ramos Pérez v. Univisión*, 178 DPR 200, 221 (2010).

Además, y según dispuesto por el Tribunal Supremo de Puerto Rico, los criterios de revisión apelativa ante una sentencia sumaria son los siguientes: (1) no se puede considerar prueba no presentada ante el nivel de instancia; (2) no se puede adjudicar hechos materiales en controversia; (3) la revisión apelativa es *de novo*; (4) se debe examinar el expediente de la manera más favorable hacia quien se opone a la solicitud de sentencia sumaria; (5) se debe observar que las mociones cumplan con los requisitos de la Regla 36 de Procedimiento Civil de 2009, *supra*, y lo discutido en *SLG Zapata Rivera v. JF Montalvo, 189 DPR 414 (2013)*; (6) debe exponer los hechos materiales controvertidos y los incontrovertidos si los hubiese; y (7) ante un caso donde no existan hechos materiales en controversia, el tribunal apelativo procederá a revisar *de novo* si el TPI aplicó correctamente el Derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

Asimismo, nuestro más Alto Foro señaló que:

[…] el Tribunal de Apelaciones debe: 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de formas codificados en la referida Regla 36, *supra*; 3) **revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos**; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas,* 199 DPR 664, 679 (2018). (Énfasis suplido).

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019). A tal efecto, nuestra revisión es una de novo, y el análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. *Íd.* De esta manera, si encontramos que los hechos

materiales realmente están incontrovertidos, debemos revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Id.*

## C. Personalidad Jurídica de las Corporaciones

Nuestro ordenamiento jurídico exige que los participantes de un pleito judicial reúnan varios criterios para participar del proceso. Uno de estos criterios es la capacidad. La *capacidad* se define como, "[la] habilidad para comparecer a un proceso sin la asistencia de otra persona". J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., [Ed. del autor], 2012, pág. 131. Sabido es que la personalidad jurídica otorga la facultad de demandar y ser demandado. Art. 30 Código Civil de 1930, 31 LPRA. sec. 104.

El Artículo 27 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 101, establece que serán personas jurídicas: (1) las corporaciones y asociaciones de interés público, con personalidad jurídica reconocida por la ley; (2) las corporaciones, compañías o asociaciones de interés partículas, sean civiles, mercantiles o industriales, a las que la ley conceda personalidad jurídica.

La personalidad de las corporaciones se regulará por las leyes que las hayan creado o reconocido. Para poder operar como corporación, la empresa deberá satisfacer las exigencias que dispone la Ley Núm. 164 de 16 de diciembre de 2009, según enmendada, conocida como Ley General de Corporaciones (en adelante, ¨Ley General de Corporaciones¨). 14 LPRA secc. 3501 *et seq.*

La Ley General de Corporaciones establece el proceso a seguir para crear e incorporar una corporación. A tales efectos, el Artículo 1.05(a), 14 LPRA sec. 3505(a), dispone que:

> (a) Otorgado y radicado el certificado de incorporación, según lo dispuesto en la sec. 3503(d) de este título y pagados los derechos requeridos por ley, la persona o las personas que de tal modo se asociaren, sus sucesores y sus cesionarios, constituirán, a partir de la fecha de dicha radicación, o de haberse establecido en el certificado de incorporación,

desde una fecha posterior que no exceda de noventa (90) días, una entidad corporativa con el nombre que aparezca en el certificado, sujeta a disolución según se dispone en esta Ley.

Una vez la corporación ha sido incorporada, el Artículo 2.02 de la Ley General de Corporaciones establece que:

Toda corporación creada al amparo de las disposiciones de esta Ley tendrá facultad para:
[…]
B. Demandar y ser demandada bajo su nombre corporativo en cualquier Tribunal y participar en cualquier procedimiento judicial, administrativo, de arbitraje o de cualquier otro género […]. 14 LPRA sec. 3522.

En otras palabras, la corporación queda incorporada y adquiere personalidad jurídica al momento de la expedición del certificado de incorporación.

El Art. 9.08 de la Ley General de Corporaciones, establece la continuación limitada de la personalidad jurídica corporativa después de la cancelación de su certificado de incorporación. Dicho artículo dispone que:

Toda corporación que se extinga por limitación propia o que por otro modo se disuelva, continuará como cuerpo corporativo por un plazo de tres (3) años a partir de la fecha de extinción o de disolución o por cualquier plazo mayor que el Tribunal de Primera Instancia (Sala Superior) en el ejercicio de su discreción disponga a los efectos de llevar adelante los pleitos entablados por la corporación y de proseguir con la defensa de los pleitos entablados contra ella, ya sean civiles, criminales o administrativos, así como a los efectos de liquidar y terminar el negocio, de cumplir con sus obligaciones y de distribuir a los accionistas los activos restantes. No podrá continuar la personalidad jurídica con el propósito de continuar los negocios para los cuales se creó dicha corporación.

Respecto a cualquier acción, pleito o procedimiento entablado o instituido por la corporación o contra ella, antes de su extinción o dentro de los tres (3) años siguientes a su extinción o disolución, la corporación continuará como entidad corporativa después del plazo de los tres (3) años y hasta que se ejecuten totalmente cualesquiera sentencias, órdenes o decretos respecto a las acciones, pleitos o procedimientos antes expresados, sin la necesidad de ninguna disposición especial a tal efecto por parte del Tribunal de Primera Instancia (Sala Superior). 14 LPRA sec. 3708.

Así, pues, el Artículo 9.08 de la Ley General de Corporaciones establece que la personalidad jurídica de una corporación no se

extingue automáticamente con la cancelación del certificado de incorporación. La Ley General de Corporaciones les concede a las corporaciones cuyo certificado de incorporación fue cancelado un término de tres (3) años para llevar a cabo pleitos entablados por y en contra de la corporación. Una vez transcurre el periodo de tres (3) años, las corporaciones pierden la facultad de demandar y ser demandadas. Es decir, transcurrido el término, la corporación pierde la capacidad de presentar o ser objeto de reclamaciones, ya que ello va en contra de la política pública que adelante la ley. El mencionado artículo persigue evitar que los tribunales resuciten una corporación, luego que ha cesado de existir. Véase: *Rodríguez Quesada v. Soto Carreras*, KLAN201701006.

## D. Administrador Judicial

Nuestra legislación corporativa contempla la posibilidad de que, expirado el plazo dispuesto por el estatuto de supervivencia, quede patrimonio de la corporación sin distribuir. Art. 9.08 de la Ley General de Corporaciones, *supra*; *Miramar Marine, Inc. v. Citi Walk Development Corporation*, supra. Particularmente, el Art. 9.09 de la Ley General de Corporaciones, 14 LPRA sec. 3709, dispone que:

> Cuando se disolviere alguna corporación con arreglo a las disposiciones de esta Ley, el Tribunal de Primera Instancia (Sala Superior), en cualquier momento y a petición de cualquier acreedor o de cualquier accionista o director de la corporación, o a petición de cualquiera que a juicio del Tribunal muestre justa causa para ello, podrá [...] designar administrador judicial a una o más personas, en representación de y para beneficio de la corporación, para que tales administradores judiciales [...] se hagan cargo del patrimonio de la corporación y cobren los créditos y recobren los bienes de la corporación con poder de demandar y defender, a nombre de la corporación, para entablar todos los litigios que sean necesarios para los propósitos antes expuestos, y para nombrar agente o agentes bajo sus órdenes y para ejecutar todos los actos que la corporación realizaría, si existiera y que sean necesarios para la liquidación final de los asuntos corporativos pendientes.

En caso de que una corporación haya quedado disuelta y el término dispuesto por el Art. 9.08 de la Ley General de Corporaciones, *supra,* haya expirado, el único remedio que existe

para liquidar cualquier propiedad que aún posea la corporación es el procedimiento dispuesto en el Art. 9.09 de esta ley. *Miramar Marine, Inc. v. Citi Walk Development Corporation, supra.*

El profesor de derecho corporativo, Carlos E. Díaz Olivo, ha indicado que el propósito del Art. 9.09 es "asegurar el cobro y la buena administración de la propiedad que aún posea la corporación luego de expirado el plazo de tres años provisto en el Artículo 9.08". Díaz Olivo, *Corporaciones: tratado sobre derecho corporativo*, Colombia, [s. Ed.], 2016.

A su vez, el Artículo 9.13 de la Ley General de Corporaciones, 14 LPRA sec. 3713, establece que:

> **El Tribunal de Primera Instancia (Sala Superior) tendrá facultad para designar administradores judiciales o tomar otras medidas para administrar y liquidar los negocios de toda corporación cuyo certificado de incorporación se revoque o cancele por cualquier Tribunal con arreglo a las disposiciones de esta Ley o de otro modo.** Tendrá, además, la facultad de emitir a tales respectos las órdenes y decretos que fueren justos y equitativos en cuanto a los negocios y activos, y en cuanto a los derechos de los accionistas y acreedores de ésta. (Énfasis suplido).

Así las cosas, el Tribunal tiene discreción para decidir si ordena o no el nombramiento de un administrador judicial que comience el proceso de disolución en el caso de corporaciones cuyo certificado de incorporación haya sido cancelado.

El Art. 9.10 de la Ley General de Corporaciones, 14 LPRA sec. 3710, establece los deberes del administrador judicial. Establece que:

> Los síndicos o los administradores judiciales de la corporación disuelta, después de pagar todos los cargos, gastos y costas, y satisfacer, dentro del alcance de su prelación legal, todos los gravámenes especiales y generales que pesen sobre los fondos de la corporación deberán pagar las demás deudas corporativas pendientes de pago, si los fondos que tuvieren en custodia fueren suficientes para realizarlos. Si los fondos no fueran suficientes, deberán distribuirlos a prorrata entre todos los acreedores que verificaren los créditos del modo que ordene o decrete el Tribunal. Si pagadas las deudas quedare algún sobrante, los síndicos y los administradores judiciales lo distribuirán y harán los pagos correspondientes entre aquéllos a quienes justamente corresponda, por haber sido accionistas de la corporación o por ser los representantes legales de los mismos.

El propósito del nombramiento de un administrador judicial es asegurar el cobro de dinero y el manejo de los recursos corporativos. C. E. Díaz Olivo, *Corporaciones: Tratado de Derecho Corporativo,* 2da. ed., Colombia, AlmaForte, 2018. En otras palabras, el administrador deberá ocuparse de satisfacer todas las reclamaciones pendientes sobre los fondos de la corporación.

**E. Disolución Corporativa**

La disolución es el proceso mediante el cual se pone fin a la existencia de la corporación. En otras palabras, la disolución equivale a la ¨muerte jurídica de la corporación¨. *Miramar Marine, Inc. v. Citi Walk Development Corporation, supra,* citando a Díaz Olivo, op. cit., pág. 371. Junto con la disolución comienza el proceso de liquidación del ente corporativo. *Miramar Marine, Inc. v. Citi Walk Development Corporation, supra.*

Durante la disolución, ¨la corporación, entre otras cosas, tiene antes que pagar las obligaciones pendientes, cobrar sus acreencias y distribuir cualquier sobrante entre los accionistas, de conformidad a las prioridades que sus acciones les confieren¨. Díaz Olivo, op. cit., págs. 381-382.

El Capítulo IX de la Ley General de Corporaciones, 14 LPRA sec. 3701, et. Seq., regula el proceso de disolución del ente corporativo. El artículo 9.05 en sus incisos A y B de la Ley General de Corporaciones lo regula de la siguiente forma:

> A. Cuando a juicio de la junta de directores, la disolución se considere conveniente para la corporación, la junta, después de aprobarse la resolución correspondiente por mayoría absoluta de la junta en sesión, convocada para ese propósito, hará que se envíe por correo a cada accionista con derecho al voto la notificación de la adopción de la resolución y la convocatoria para una reunión de accionistas para tomar acción sobre la resolución.
> B. Durante la reunión de accionistas se votará sobre la disolución propuesta. Si la mayoría de las acciones en circulación, con derecho al voto en la misma, votasen a favor de la disolución propuesta, se otorgará, autenticará y radicará, en las oficinas del Departamento de Estado, de acuerdo al Artículo 1.03 de esta Ley, un certificado de disolución en el cual se hará constar:

1. El nombre de la corporación,
2. La fecha en que se autorizó la disolución;
3. Que la disolución ha sido autorizada de acuerdo con este Artículo; y
4. Los nombres y las direcciones residenciales de los directores y oficiales.  14 LPRA sec. 3705.

El proceso de disolución se puede realizar mediante tres modalidades, a saber: la voluntaria, la involuntaria y la administrativa.  Díaz Olivo, op. cit., pág. 371. La disolución voluntaria es aquella presentada libre y voluntariamente por los directores y accionistas de la corporación. En cambio, la disolución involuntaria "se obtiene por mandato judicial en ausencia de consenso o acuerdo entre los accionistas". *Íd.* Finalmente, la disolución administrativa emana de una orden del Secretario de Estado cuando considere que la corporación incumplió con las obligaciones impuestas por el Departamento de Estado.

**F. Responsabilidad Limitada de las Corporaciones**

Es norma reiterada en nuestra jurisdicción que las corporaciones poseen personalidad jurídica propia, separada y distinta a la de sus miembros y accionistas. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49-50 (2015).  En otras palabras, las corporaciones tienen autonomía patrimonial y responsabilidades separadas de las de sus accionistas. *Fleming v. Toa Alta Develop. Corp.,* 96 DPR 240, 244 (1968). La personalidad jurídica no desaparece necesariamente por razón de que una persona natural posea todas las acciones de la corporación. *Swiggett v. Swiggett, Inc.*, 55 D.P.R. 76 (1939).

En nuestro ordenamiento jurídico las corporaciones gozan de personalidad jurídica y patrimonio propio, independiente de aquel de sus accionistas.

No obstante, el Art. 1.05 (c) de la Ley General de Corporaciones dispone que "[t]odas las personas que actúen como corporación sin autoridad para ello, serán responsables solidariamente de todas las deudas y obligaciones incurridas o

asumidas como resultado de esta actuación¨. 14 LPRA sec. 3505. El referido inciso proviene de la sección 146 del "Model Business Corporation Act" de 1950, la cual contiene un lenguaje similar al utilizado en nuestro Artículo 1.05(c). El comentario de la sección 146 señala que la misma está diseñada para eliminar cualquier aplicación de la doctrina de corporación *de facto*. Esto pues, según se indica, la única autorización para actuar como una corporación bajo dicha legislación se deriva del cumplimiento de los requisitos legales para incorporarse.

**III.**

En este caso, los hermanos García nos solicitan la revocación de la *Resolución* del 30 de mayo de 2023 mediante la cual el TPI denegó su solicitud de sentencia sumaria. Al examinar *de novo* la moción de sentencia sumaria presentada por la parte peticionaria, nos resulta evidente que el TPI no erró al denegarla.

Según adelantamos en el tracto procesal, el foro primario determinó que los siguientes hechos no estaban en controversia:

1. Las oficinas 504 y 505 pertenecen en pleno dominio a Northwestern Trading conforme las constancias del Registro de la Propiedad.

2. Las oficinas 702, 703, 707 y 708 pertenecen en pleno dominio a Northwestern Resources conforme las constancias del Registro de la Propiedad.

3. Los únicos y universales herederos de Don Mario García Quintero y Doña Anunciata Incera son los codemandados María José, María del Pilar, José Oscar y Mario Oscar todos de apellidos García Incera.

4. El Sr. Mario García Quintero y la Sra. Anunciata Incera eran los únicos accionistas y directores de las corporaciones Northwestern Trading y Northwestern Resources.

No obstante, este entendió que dichas determinaciones no eran suficientes para adjudicar el presente caso ante controversias que necesitarán ser atendidas en un juicio plenario. Las controversias de hechos que el TPI identificó que se mantenían en controversia fueron las siguientes: (1) el certificado de incorporación de las corporaciones fue cancelado y las corporaciones aún no habían sido disueltas, y; (2) a quiénes le corresponde el pago de las cuotas de mantenimiento adeudadas.

Los peticionarios señalan, en primer lugar, que el TPI se equivocó al determinar que la autoridad del Administrador Ing. Ángel Luis Ruperto para representar al Consejo de Titulares era un asunto que ya fue atendido y resuelto por el Tribunal. Segundo, argumentan que erró el TPI al no desestimar la demanda en cuanto a los hermanos García, ya que los demandantes están impedidos por Ley para radicar la demanda en contra de los accionistas. Tercero, alegan que erró el TPI al nombrarle un administrador judicial a unas corporaciones que no forman parte del pleito. Cuarto, y último, plantean que el TPI se equivocó al entender que las corporaciones carecen de personalidad jurídica y que, por lo tanto, los accionistas eran responsables de las deudas de estas.

Respecto al primer señalamiento de error, entendemos que la determinación relacionada a la autoridad del Administrador para representar al Consejo de Titulares no es revisable. La determinación fue dictada mediante *Resolución* el 11 de mayo de 2021 y la parte no solicitó Reconsideración. Por lo tanto, la misma advino final y firme. Transcurridos más de dos (2) años, la solicitud es tardía y, por tanto, improcedente.

Veamos, además, que, respecto al tercer señalamiento de error, no procede la alegación de los peticionarios de falta de parte indispensable con relación a las corporaciones. El certificado de incorporación de las corporaciones fue cancelado en el 2014.

Como ya adelantamos, el Art. 9.08 de la Ley General de Corporaciones, *supra,* establece la continuación limitada de la personalidad jurídica corporativa después de la cancelación de su certificado de incorporación por un término de 3 años. No fue hasta el 2018 que se presentó la demanda de cobro de dinero, 4 años luego de cancelados los certificados de incorporación.

Por tanto, el término que dispone el Art. 9.08 de la Ley General de Corporaciones de 3 años desde la cancelación del certificado de incorporación transcurrió. Como consecuencia de esto, las corporaciones perdieron toda capacidad para demandar y ser demandados. En otras palabras, perdieron su personalidad jurídica y no pueden formar parte del pleito.

Además, al haber transcurrido más de 3 años sin que las corporaciones fueran disueltas, procedía el nombramiento de un administrador judicial para que comience el proceso de disolución.

Entendemos que el segundo y cuarto señalamiento de error están relacionados y, por lo tanto, procede discutirlos en conjunto. Según hemos reiterado, las corporaciones poseen certificados de incorporación que fueron cancelados en el 2014. No obstante, los fallecidos Mario García y Anunciata Incera continuaron actuando como corporaciones sin estar debidamente autorizados para ello. Las corporaciones permanecieron inscritas en el Registro de la Propiedad como titulares de las oficinas situadas en el Condominio 101 Méndez Vigo Oeste. A su vez, continuaron acumulando una deuda sobre las cuotas de mantenimiento adeudadas al Consejo de Titulares.

El Art. 1.05 (C) de la Ley General de Corporaciones establece que todas las personas que actúen como corporación sin autoridad para ello, serán solidariamente responsables de todas las deudas y obligaciones incurridas como resultado de esa actuación. Bajo el mencionado artículo, a las corporaciones Northwestern Trading y

Northwestern Resources no les aplica el principio de la responsabilidad limitada.

En virtud de lo anterior, concluimos que los errores señalados no se cometieron.

Por los fundamentos expuestos, se *confirma* la Resolución emitida por el TPI y se ordena la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones